When you're ready. Thank you, Your Honor. May it please the court, my name is Casey Jones and I represent the petitioner Mumin Abass in this matter. And what law school are you from? University of Idaho College of Law. Thank you very much. Okay, welcome. Thank you. May I reserve two minutes for rebuttal, Your Honor? Yes, and I'll say the same thing to you. It counts down, so keep an eye on it as it goes down. Thank you. Your Honor, I will be addressing the asylum issues before this court, and my colleague, Mr. Jonathan Schertz, will address the Convention Against Torture Issues. And how do you want to divide up your time? We're planning on splitting it four and four, so I'll try and keep an eye on the clock. Okay, so if you can start it over. Now that we've got that housekeeping out of the middle, let's go back to ten. There we are. Okay. Thank you so much, Your Honor. Your Honors, the government in this case acknowledges that the board's decision denying Mr. Abass's claim for asylum as a gay man from Ghana cannot stand as it is. However, the government is asking this Court to send the case back to the beginning to give it a third chance at getting this case right, and this is not necessary. This Court's press Can you help me on something that bears on whether it's necessary and that confused me here? As I recall, when this fellow was seen by a psychiatrist, the psychiatrist doubted his credibility. The I.J. found that he was credible. The BIA did not, as far as I'm concerned, believe that the I.J. did not, as far as I remember, reach credibility. Instead, the BIA did not say whether it agreed with the I.J. or not on credibility. Is that true? And or am I incorrect on my memory? That would bear on the remand issue, I think. Yes, Your Honor. The board's, on Addendum 2, I believe it's page 8 in the administrative record, is the board's decision, and it says that the I.J. found no reasonable cause to believe the Respondent was incompetent to perform the functions necessary, and it held that that finding was not clearly erroneous in this case. But that's not a finding on credibility. Usually, the BIA says whether it affirms the I.J.'s decision on credibility or whether it doesn't or whether it finds the doesn't reach that. Your Honor, my understanding from this record, the I.J. found that Mr. Abbas was credible in this case, and the board's statement here that the finding is not clearly erroneous does not. I didn't think it spoke to that finding, but maybe it did. Tell me the words. I thought it spoke to his competence. The exact statement, as I said, it's on page, Addendum page 2, for Your Honor's reference, it says that the immigration judge found no reasonable cause to believe the Respondent is incompetent to perform the functions necessary to represent himself in proceedings. This finding is not clearly erroneous. Well, you can be honest or dishonest, and you can be competent or incompetent in either case. Your Honor, in this case, he was found credible, he was deemed competent, and there are no arguments advanced by the government here that he's not nuts. Competent means he's not nuts, but you can be perfectly sane and still lie. Yes, Your Honor. The board does not go into competency beyond the credibility portion that I've mentioned. That's why I understood them not to be making a determination one way or the other on credibility. Yes, Your Honor. The information, the case before us has been preceded under the notion that the I.J. found him credible or competent, which I agree is different than competency. But the evidence here is to be taken as presented by Mr. Abbas, and the evidence in the record compels the conclusion here that the Ghanaian government is both unable and unwilling to control private persecutors of LGBT individuals across Ghana, and that is the one ground for asylum on which this — on which Mr. Abbas was denied asylum. And the evidence here compels the contrary conclusion. This Court has set forth several ways that an applicant can demonstrate that the individuals who are subject to violence by private persecutors in the absence of reporting, and here Mr. Abbas has established at least four of those ways. The evidence in the record compels the conclusion that private persecution of LGBT people is widespread and well-known. In the record are four U.S. State Departments, all unanimous in their discussion of the conditions in Ghana on the ground, and the fact that police often harass or even extort victims who attempt to — victims who attempt to report their crimes. Your Honors, I see that I'm running into my colleague's time. If you have any further questions, I'll turn it over to my colleague. Thank you. Okay. Thank you, Your Honors. My name is Jonathan Schertz. Judge Kleinfeld, we'd first like to address your particular question regarding credibility, and in the BIA's decision, and this is at AR-3, there is a specific claim where they say the respondent is seeking relief based upon a claim that he has been and will be persecuted in Ghana on account of his homosexuality. Although the immigration judge expressed concern regarding the credibility of certain aspects of the respondent's claim, he ultimately found the respondent credible. The BIA does not reverse on that point. And as this Court's prior precedents have held, if the BIA does not address something, it is considered to be taken as fact. And so we would present that as a response to your question. So what are the cases that tell us this? Meaning, if the BIA doesn't reach it, that is, the BIA is assuming that the testimony is true. Yes. And the BIA then says, assuming the testimony is true, he nonetheless loses. Yes, Your Honor. But the BIA has not explicitly said, we believe the testimony. No. And you're saying if the BIA does as the BIA has done here, we are to assume that the BIA intended to leave intact the credibility finding of the EIJ. What's the case that says that? Your Honor, I don't have that case in front of me, but we would certainly be able to present that upon rebuttal. Okay. But in regards to the Convention Against Torture, Your Honor, Mr. Abbas's claim requires him to prove three things. First, that the harm he suffered was torture, a conclusion the Board rightfully corrected, and that opposing counsel does not challenge here. Second, that it is more likely than not he would be tortured if removed to Ghana. The evidence in the record compels this conclusion and compels the Court. Why does it? With Barajas, the Convention Against Torture case, the torturers had marked him on his forehead so it was not concealable, and he had been advised by the torturers, who were police, that he would be known throughout Mexico. In this case, it looks like his father and his family and the people in his locality would know about him. But I don't see why we should conclude from this that he's going to be tortured anywhere in his home country. Thank you, Your Honor. The answer to that question is that the country condition reports that were submitted to the IJ hearing and the additional condition reports that were submitted by Mr. Abbas later on all discuss the prevalent discrimination, abuse, extortion that occurs throughout Ghana. There are instances in that state. No question about it. You're absolutely right on that. But just because they discriminate against or persecute homosexuals and that the law is discriminatory against homosexuals, it doesn't mean torture. There can be one without the other. Yes. So why should we understand that he'll be tortured if he goes back? Well, Your Honor, I see that we are getting into our rebuttal time. May I answer that question? Please do answer and we'll make sure you get time for rebuttal. Thank you, Your Honor. Your Honor, in 2005, this court in Nuruvi-Gonzalez specifically stated that the existence of past torture is the principal factor on which it relies in determining the future. It's certainly a factor. Yes. And the principal factor, as this court said, and it upheld that in 2010 in Edu V. Holder. And the fact that he was tortured, it carries heavy weight. And there's evidence in the record that his partner, Ibrahim, who did not have the opportunity to escape, was brutally murdered afterwards because of this relationship. And so there are also affidavits, one from a cousin, one from another person in his neighborhood, both of which discuss the fact that he will be killed if he is returned to Ghana, not if he's returned to Accra, not if he's returned to Medina or someplace, that if he is returned to Ghana at all. Okay. I've got another question and the two minutes remains intact, okay? Thank you, Your Honor. If we were to reverse on grounds of or grant the petition and say that assuming the truth of the testimony, asylum is available and withholding is available, does he care about cat relief? Yes, Your Honor. Why? Because this court has the opportunity to correct the errors made by the board below. And we would like to preserve all opportunities for our client to have relief. And this court can do that. It has done that in the past. It has granted all three. And it did that in Nuruvi Gonzalez in 2005, for example. And, Your Honors, we would respectfully ask this court to do just that, to grant his petition for review, to reverse the board's denial of asylum, withholding under the Refugee Act and Convention Against Torture, remand the asylum claim for an exercise of discretion, and order grants of withholding and Convention Against Torture. Okay. Thank you. Thank you, Your Honors. And we'll give you time for rebuttal. Thank you. May it please the Court. Victoria Braga, appearing on behalf of the Attorney General. The Court should remand this case to the Board of Immigration Appeals for further analysis consistent with the Court's intervening precedent. Specifically, this Court's en banc decision in Bringas affects the agency's analysis in this case. In Bringas, the Court considered the situation of when a government is unable and unwilling to protect people from private persecution. I couldn't actually see why the cases that you cited that had come down since the decision would affect the outcome. What was new about them? I didn't see what was new. Well, Bringas specifically rejected a gap-filling construct that this Court had operated under in its prior precedent, specifically Rahim Zadah, Afriyi, and Castro Martinez. In those cases, when analyzing whether a government was unable and unwilling to protect people from private persecution, the Court provided that when a petitioner did not report harm he suffered to police, this created an evidentiary gap that the petitioner was required to fill with other evidence. In Castro Martinez, the Court used this gap-filling construct, and the agency actually cited a prior version of Castro Martinez in its decision, which although it did not explicitly reference the gap-filling construct, did cite Rahim Zadah, which does use the same construct. Excuse me, counsel. Why doesn't the record on its own establish that Ghana's laws effectively deprive Abbas of any recourse? Well, there are some evidentiary issues with the record. Specifically, Bringas focused on the fact that the Court, in analyzing this question, should elicit or focus on a petitioner's testimony regarding whether he reported harm that he suffered to police, and if not, why not. And although the immigration judge and the Board relied on the fact that the petitioner did not report harm he suffered to the police, as both Petitioner and Amicus in their briefs state to this Court, that question was actually never asked of Petitioner, so there's no testimony in the record on that point. I don't see why it matters here. I mean, in a place where something is against the law, as it is in Ghana, I can't see why reporting to the police would matter to him much. We have Ghanaian law that says homosexuality is against the law, and we have the country report that says that the police will not protect him. Why isn't that all it takes? Well, Bringas did highlight that those are important considerations. However, it also did focus, as did prior cases of this Court, including Rahim Sadat, Afriyi, and Castro-Martinez, as well as Korablina, on a petitioner's testimony regarding his ability to report the crimes that he suffered and the harm that he suffered to police and the police's response. So given this Court's precedent, which places such a focus on that analysis, it would be necessary for the Court to remand to the agency to allow the agency to develop the record in that regard so that the case could be properly analyzed under this Court's precedent, including Bringas. But I'd like to go back to Judge Kleinfeld's question. It's against the law to be a homosexual in Ghana. Why would you go to the law and say, I am a homosexual? Wouldn't he be arrested immediately? That may be true, but, again, the record is unclear on that point. The petitioner was never asked whether he reported the harm to the police and if he didn't, why he didn't. Additionally — Why he didn't was that he'd be arrested. Isn't that clear from the record? Well, I don't know if the country report provides that he would be arrested. I think the State Department country report actually says that although certain types of behavior are criminalized under Ghana's law, it's unclear whether that law is actually used to prosecute homosexuals. Well, what he's required to show is that the authorities are unable or unwilling to protect him against the discriminatory or persecutorial behavior. So if it's against the law, if it is criminally prohibited in Ghana to engage in homosexual activity, and he goes to the police and says, these bad things have happened to me because I have engaged in criminally — in what is criminally prohibited here, would you please protect me? It's not very hard for us to think, you know, that's not going to work out very well for him. So I don't see why Bringus requires a remand when under Bringus and related cases, there was a fair amount of evidence in Bringus itself that Mexico not only recognizes a protected status for homosexuals and homosexual activity, but indeed makes some efforts in that respect. Now, the efforts as we see in Bringus are imperfect, but given the law in Ghana, I just don't see the comparison. Well, again, there's several reasons to remand under Bringus, the first being that Bringus arguably — or Bringus did explain that arguably under prior precedent petitioners were subject to a heightened burden in proving this question of unwilling and unable. The agency here, if it did indeed imply that heightened burden, and again, given the cases that the immigration judge cited, it's likely that the agency may have, the court needs to remand to the agency to allow the agency to analyze consistently with Bringus. An additional point regarding Bringus and the focus on a country's laws is that under Castro-Martinez, the agency falsely equated, or under Castro-Martinez, a country's laws regarding whether homosexuality is prosecuted were falsely equated with on-the-ground progress. So the agency not having the benefit of Bringus, which directs that the agency should focus not on the law specifically, but rather on how homosexuals are treated in a country and the government's response to that, analyzed in a way that was inconsistent with Bringus and focused on Ghana's law. So it would be necessary for the court to remand to the agency so that the agency could focus instead of specifically and only on Ghana's law, on, as petitioner and advocates have noted, the close to 30 articles in the record showing the on-the-ground situation in Ghana. Now, you're arguing, of course, that we should remand in light of Bringus. Have you argued that we should remand to get an adverse credibility or credibility finding, one way or the other, from the BIA? Have you made that argument? We have not made that argument. To the extent that the case is remanded and further testimony is taken, specifically on the question of whether Petitioner reported his harm to the police, his credibility would again be at issue. Additionally, as this Court noted, there were no other issues. I'm just asking you, in your briefing to us, did you argue that we should remand in order to find out what the BIA thought about the credibility of this particular petitioner? I don't believe we made that argument, Your Honor. Okay. Is that issue over then? I think to the extent that testimony and evidence is offered, a petitioner's credibility is always at issue. So as we are arguing that the case needs to be remanded for the development of the record, to the extent that further testimony is provided, the petitioner's credibility would be at issue. The BIA may well be entitled to reopen evidence on credibility. I understand that, but it sounds like your agency made a deliberate decision in this case not to ask for a remand so that there could be a BIA judgment on credibility. Am I understanding that correctly? Yes, you are understanding that correctly. As Your Honor noted, however, there were competency concerns in this case, and as the agency has noted, competency is always a fluid situation. So to the extent that the case were remanded and further testimony were offered, the petitioner's ---- Somehow I feel like because we're using the more formal diction here, people are failing to think about what it means. Competency is, is he nuts? Credibility is, is he lying? Nuts and lying, people who are nuts can tell the truth and people who are not nuts can lie. It just, they're unconnected. Yes, I understand that, Your Honor, but competency does have a bearing on credibility, whether a person is lying and why they may be lying. So to the extent that on remand the petitioner's competency is reevaluated, his credibility would also be at issue. If there are no further questions, I'd like to conclude by asking the Court to remand the case in light of intervening precedent. Thank you. Thank you. Would you put two minutes on the clock, please? Thank you, Your Honors. There are three points. Are you going to be the entire rebuttal? Yes, I will. Thank you for asking. There are three points I would like to make on rebuttal. The first is that the Board, specifically in their decision, stated that they were reviewing de novo the issue of credibility. Further down on Addendum 2 AR8, they say that ultimately the respondent was found credible. As the government has just stated, they appear to have waived this argument, so the testimony given is taken as true. My second point is that the overwhelming country conditions in this case compel the conclusions with respect to both asylum and the Convention Against Torture that the government is both unable and willing and that it acquiesces to the private persecution of LGBT persons in Ghana. As I mentioned before, there are U.S. State Departments that unanimously discuss how LGBT people are often victims of violence, that the government is aware of this, that police often harass and extort the victims. On AR284 as well, there's an article about Amnesty International condemning a chief for calling for the endorsing of gay people in the country. As well in the U.K. Border Agency on 285, they also referred to statements made by the Western Region chief calling for the arrests of gay individuals and asking landlords and tenants to report on gay people. The evidence in the record is very clear that gay people are not safe in Ghana anywhere, and this is clear as well for Mr. Abbas. As my colleague mentioned, in the record as well on AR200 and 202 are letters, one from a neighbor and one from his cousin, stating that his partner, Ibrahim, who did not flee and escape, was brutally beaten and that people now are aware that Mr. I heard that he was murdered or beaten, which one or both? I apologize, brutally beaten to death. Yes, he was murdered, unfortunately. And this goes directly to the likelihood of torture that Mr. Abbas would experience if he were removed. I see my time is up, so to briefly conclude. Can I ask one question before you wind up? I'm sure that Judge Fletcher will give you another moment after that. I noticed that in your brief you argued basically that a remand means he likely spends another three years in jail, and that has not been brought up in front of us. Is he out of jail? Is he going to get out of jail? Your Honor, he has been released on bond at this point. Thanks. So. Okay. Thank you very much. May I briefly conclude? Yes, please. Thank you, Your Honor. For the reasons we have discussed, Mr. Abbas respectfully requests that this Court grant his petition for review and reverse the Board's denial of asylum, withholding of removal, and convention against torture. Any further requests that this Court remand his asylum claim for an exercise of discretion and an order granting withholding of removal and relief under the convention against torture. Thank you, Your Honors. Thank you very much. And I'll say the same thing to you. As I said to the Friar, thank you very much for doing the pro bono argument. We very much appreciate it, and you've done a very nice job. Thank you. The case of Abbas v. Sessions is now submitted for decision. The next case, Morales-Gomez v. Sessions.
judges: D.W. Nelson, Kleinfeld, W. Fletcher